JESSE A. CRIPPS, SBN 222285
  jcripps@gibsondunn.com
ANDREW G. PAPPAS, SBN 266409
  apappas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant
NORTHROP GRUMMAN SYSTEMS CORP.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANH BUI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN SYSTEMS CORP., a Delaware Corporation, and DOES 1–50, inclusive,<br><br>Defendants. | CASE NO. **'15CV1397 WQHWVG**<br><br>**NOTICE OF REMOVAL**<br><br>[San Diego County Superior Court, Case No. 37-2015-0012448-CU-OE-CTL] |

Gibson, Dunn &
Crutcher LLP

CASE NO. _____

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ANH BUI AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Northrop Grumman Systems Corporation ("Northrop Grumman") hereby removes to the United States District Court for the Southern District of California the above-captioned state court action, originally filed as Case No. 37-2015-0012448-CU-OE-CTL in San Diego County Superior Court, State of California. Removal under CAFA for diversity class actions is appropriate, as here, when there are more than 100 class members, at least one class member is diverse from at least one defendant, and there is more than $5 million, exclusive of interests and costs, in controversy. 28 U.S.C. § 1332(d). Removal is proper on the following grounds:

## TIMELINESS OF REMOVAL

1. Plaintiff Anh Bui ("Plaintiff") filed a class action Complaint against Northrop Grumman on April 14, 2015, in San Diego County Superior Court, State of California, Case No. 37-2015-0012448-CU-OE-CTL, captioned *Anh Bui, individually and on behalf of all others similarly situated v. Northrop Grumman Systems Corp., a Delaware Corporation, and Does 1–50, inclusive*. Plaintiff filed a First Amended Complaint on May 21, 2015. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Alternative Dispute Resolution (ADR) Information, First Amended Complaint, and Service of Process Transmittal form are attached as Exhibits 1–6 to the Declaration of Jesse A. Cripps ("Cripps Decl.") filed concurrently herewith. Plaintiff served Northrop Grumman, through its agent for service of process, CT Corporation, with the Summons, Complaint, and First Amended Complaint on May 26, 2015. *See* Cripps Decl., Ex. 6. This notice of removal is therefore timely pursuant to 28 U.S.C.

§ 1446(b), because it is filed within 30 days after service of the First Amended Complaint was completed.

2. There have been no other proceedings in this action.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND FACTS GIVING RISE TO JURISDICTION AND REMOVAL

**A.  Overview of Plaintiff's Claims.**

3. Plaintiff's First Amended Complaint alleges that Northrop Grumman violated various state wage and hour laws. Specifically, she claims that Northrop Grumman (1) failed to provide meal periods as required by California Labor Code §§ 226.7 and 512 and applicable Industrial Welfare Commission ("IWC") Wage Orders; (2) failed to provide rest periods as required by Labor Code §§ 226.7 and 512 and applicable IWC Wage Orders; (3) failed to pay all wages owed upon separation from Northrop Grumman's employment, in violation of Labor Code § 203; (4) failed to provide accurate itemized wage statements, in violation of Labor Code § 226; and (5) violated Business & Professions Code § 17200 *et seq*. Cripps Decl., Ex. 5 (FAC ¶¶ 34–70). Plaintiff also seeks to proceed under the Private Attorneys' General Act of 2004 ("PAGA"), Labor Code § 2698 *et seq*. Cripps Decl., Ex. 5 (FAC ¶¶ 71–77).

4. Plaintiff seeks to represent a class of "similarly situated" individuals described as follows: "All persons who have been employed by Defendants as non-exempt, however titled, in the state of California within four (4) years from the filing of the complaint in this action until its resolution." Cripps Decl., Ex. 5 (FAC ¶ 25). "Plaintiff also proposes a Sub-Class defined as: All persons who have were [sic] employed by Defendants as non-exempt, however titled, in the state of California and have since separated within three (3) years from the filing of the complaint in this action until its resolution." *Id*.

5. Among other things, Plaintiff seeks "unpaid wages for [Northrop Grumman's] failure to provide meal periods," "unpaid wages for [Northrop Grumman's] failure to provide rest periods," "penalties," "prejudgment interest,"

1  "reasonable attorneys' fees," and "costs of suit and expenses."  Cripps Decl., Ex. 5
2  (FAC, Prayer for Relief ¶¶ A–J).

3        6.    Northrop Grumman denies any liability in this case and intends to
4  vigorously oppose Plaintiff's individual claim as well as class certification of the
5  putative class claims.  Northrop Grumman believes that class treatment is
6  inappropriate under the circumstances here and that there are many differences
7  between the named Plaintiff and the various employees Plaintiff seeks to represent in
8  his Complaint.  Northrop Grumman expressly reserves all rights in this regard.
9  Significantly, the Ninth Circuit has explicitly held that a defendant need not concede
10 liability on any of a plaintiff's claims in order to establish the amount in controversy,
11 but need only present evidence showing how much is "in play."  *Lewis v. Verizon*
12 *Communications, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010).  Accordingly, for purposes
13 of the jurisdictional requirements *for removal only*, Northrop Grumman has a good
14 faith basis to believe that the *allegations* in Plaintiff's Complaint put in controversy, in
15 the aggregate, an amount that exceeds $5 million for the purported class claims.  *See*
16 28 U.S.C. § 1332(d)(6) (claims of individual class members set forth in the Complaint
17 are "aggregated to determine whether the matter in controversy exceeds the sum or
18 value of $5,000,000").

19 **B.**    **Plaintiff Alleges that There Are More than 100 Members in the Proposed**
20        **Class.**

21       7.    Plaintiff alleges that "[w]hile the exact number of the Class members is
22 unknown to Plaintiff at this time, Plaintiff is informed and believe[s] and thereon
23 alleges that there are more than 100 (one hundred) Class members."  Cripps Decl.,
24 Ex. 5 (FAC ¶ 29).  Taking Plaintiff's allegations as true, there are more than 100
25 members in the proposed class.

26 **C.**    **Northrop Grumman and Plaintiff Are Citizens of Different States.**

27       8.    Plaintiff alleges that she "was[,] at all times relevant to this action, a
28 resident of San Diego, State of California."  Cripps Decl., Ex. 5 (FAC ¶ 7).

9.  In contrast, as Plaintiff also alleges, Northrop Grumman "is a Delaware Corporation." *Id.* (FAC ¶ 9). Indeed, at the time this action was commenced and at all times since, Northrop Grumman was and is a corporation organized under the laws of the State of Delaware, with its principal place of Business in Falls Church, Virginia. *See* Cripps Decl., Ex. 7. A corporation is a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c). The phrase "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center," which "should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Northrop Grumman's headquarters in Falls Church, Virginia constitutes its "nerve center." *See* Cripps Decl., Ex 7. Among other reasons: (1) Northrop Grumman's executive and administrative operations are centrally managed from Falls Church, Virginia; (2) the respective officers for these departments work in Falls Church, Virginia; (3) most of Northrop Grumman's executive officers maintain their offices at Northrop Grumman's headquarters in Falls Church, Virginia; and (4) meeting of Northrop Grumman's Board of Directors take place from time to time at its headquarters in Falls Church, Virginia.

10.  Accordingly Defendant is and has been at all relevant times a citizen of the State of Delaware and the State of Virginia. Plaintiff and Defendant are therefore citizens of different states.

11.  Plaintiff also named as defendants Does 1 through 50. For purposes of removal jurisdiction, the "citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b).

Gibson, Dunn & Crutcher LLP

5

CASE NO. _____

**D.     The Amount Placed in Controversy by Plaintiff's Class Claims Exceeds $5 Million.**

12.     Where a complaint "fails to allege a sufficiently specific total amount in controversy . . . [courts] apply the preponderance of the evidence burden of proof to the removing defendant." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).  Here, Plaintiff alleges in conclusory fashion that the amount in controversy "is presently believed to be under the five million dollar ($5,000,000.00) threshold of [CAFA]"; however Plaintiff has not specified the amount that he alleges is in controversy nor has expressly limited his recovery in this case.  *See* Cripps Decl., Ex. 5 (FAC ¶ 6; *id.* Prayer for Relief).  Under such circumstances, "[i]t is clear that in the context of removal, even before CAFA, plaintiff's allegation simply does not control or end the amount in controversy analysis[;] [rather] . . . the court must assess jurisdiction under CAFA to determine whether the amount in controversy requirement of § 1332(d) has been met." *Yeroushalmi v. Blockbuster Inc.*, 2005 U.S. Dist. LEXIS 39331, at *7 (C.D. Cal. July 11, 2005).  As such, the preponderance of the evidence standard applies in determining whether the $5 million threshold is likely to be met.  *See, e.g., Guglielmino,* 506 F.3d at 700 (applying the preponderance of the evidence standard where plaintiff's complaint alleged that "damages to each Plaintiff are less than $75,000").

**1.     Plaintiff's Claim for Waiting Time Penalties *Alone* Puts at Least $5.76 Million in Controversy.**

13.     Plaintiff alleges that every putative member of the proposed sub-class of is entitled to recover waiting-time penalties pursuant to Labor Code section 203.  Cripps Decl., Ex. 5 (FAC ¶ 56; *see also id.* ¶ 25 (defining sub-class as non-exempt California employees who "separated within three (3) years from the filing of the complaint in this action")).

14.     Northrop Grumman has determined that there were more than 1,200 full-time, non-exempt employees in California who resigned or were terminated in the

three-year period between April 14, 2012 and April 14, 2015. Declaration of Mark C. Gass filed concurrently herewith ("Gass Decl.") ¶ 3(a). The average hourly pay rate for these employees at the time of termination exceeds $20 per hour. *Id.* ¶ 3(b).

15. For this reason alone, the amount in controversy put in issue by Plaintiff's waiting-time penalty claim *alone* exceeds at least $5.76 million, calculated as follows:

| Daily rate for employees ($20 average hourly rate x 8 hours per day): | $160 daily rate[1] |
|---|---|
| $160 daily rate x 30 days maximum penalty: | $4,800 per employee |
| Amount in controversy based on Plaintiff's allegations ($4,800 per employee x at least 1,200 employees): | $5,760,000 at a minimum |

**2. Plaintiff's Pay-Stub Claim Adds at Least Another $7,650,000 to the Amount in Controversy.**

16. Plaintiff alleges, "[a]s a pattern and practice, in violation of Labor Code § 226(a) and the IWC Wage Orders § 7(A), [Northrop Grumman] did not and still do[es] not furnish each of the members of the Wage Statement Class with an itemized statement in writing showing accurately recording the meal and rest period premium wages owed for each pay period [sic]"; and that "[p]ursuant to Labor Code § 226(e), the members of the Wage Statement Class are entitled to fifty dollars ($50.00) per employee for the initial pay period in which a violation hereunder occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period,

---

[1] Under one interpretation of California Labor Code section 203, calculation of waiting time penalties for wages owed requires the calculation of an employee's *daily* rate of pay, which is then multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages, in order to determine the amount of penalty owed. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days"; the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Drumm v. Morningstar*, 695 F. Supp. 2d 1014 (N.D. Cal. 2010) (same). Northrop Grumman reserves the right to challenge this interpretation.

not exceeding an aggregate penalty of four thousand dollars ($4,000.00)." Cripps Decl., Ex. 5 (FAC ¶ 61, 63).

17. Plaintiff's FAC does not actually define a "Wage Statement Class," but in the one-year period prior to the filing of the Complaint, Northrop Grumman employed approximately at least 3,000 non-exempt employees in California. *See* Gass Decl. ¶ 4(a).[2] These employees received paychecks at least on a bi-weekly basis, and worked at least 78,000 total pay periods during this time period. *Id.* ¶¶ 2, 4(b).

18. Thus, taking Plaintiff's allegations as true, the amount in controversy put in issue by Plaintiff's pay-stub penalty claim *alone* exceeds $7,650,000, calculated as follows:

| | |
|---|---|
| Penalty for initial violation for each employee (3,000 employees or pay periods x $50): | $150,000 |
| Penalty for *at least* 75,000 subsequent violations in the one-year time period ([78,000[3] pay periods *minus* 3,000 initial pay periods] x 100) exceeds: | $7,500,000 |
| Amount in controversy based on Plaintiff's allegations exceeds: | $7,650,000 |

### 3. Plaintiff's Other Claims Also Put the Amount in Controversy Well Over $5 Million.

19. Taking only the $5.76 amount in controversy from Plaintiff's claim for waiting time penalties and the $7.65 amount in controversy from her claim for failure to provide accurate wage statements, the aggregate of amount in controversy is well in excess of **$13.41 million**. That number does not take into account Plaintiff's other claims, which push the amount in controversy even higher.

---

[2] The statute of limitations for an action upon a statute for a penalty is one year. Cal. Civ. Proc. Code § 340(a).

[3] There were at least 26 pay periods at issue from April 2014 to April 2015.

20.     For example, Plaintiff alleges that he and the putative class members are also entitled to the following relief:

21.     ***Meal and Rest Break Penalties.***  Plaintiff alleges that Northrop Grumman "did not provide Plaintiffs and Class Members with all their statutorily authorized meal periods," and that Northrop Grumman "did not permit or authorize Plaintiff and some Class Members to take all of their required rest periods and did not otherwise provide Plaintiff and the members of the Plaintiff's Class with all of their authorized rest periods."  Cripps Decl., Ex. 5 (FAC ¶¶ 36, 48).  If Plaintiff is correct, then the damages calculations above would increase significantly.  For example, if each putative class member missed one meal period ***or*** one rest break for which he or she was not compensated, then the amount in controversy for these claims alone would exceed $1.872 million (assuming a minimum wage of $8 per hour x 234,000 pay periods[4]).

22.     ***Attorneys' Fees***.  The attorneys' fees Plaintiff seeks are also properly included when determining the amount in controversy under CAFA.  *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (holding that where an underlying statute authorizes an award of attorneys' fees, such fees may be included in the amount in controversy).  "[T]he Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'"  *Jasso v. Money Mart Express, Inc*., 2012 U.S. Dist. LEXIS 27215, at *20-21 (N.D. Cal., March 1, 2012) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998)); *Giannini v. Northwestern Mut. Life Ins*., Co., 2012 U.S. Dist LEXIS 60143, at *13-14 (N.D. Cal., April 30, 2012) ("it is not unreasonable for [Defendants] to rely on this estimate [of calculating the amount of attorneys' fees in controversy] by using the common fund

---

[4] The total of 234,000 pay periods was extrapolated as follows:  78,000 pay periods from April 2014 to April 2015 x 3 years = 234,000 pay periods.  Although Plaintiff alleges that the liability period for her meal-period and rest-break claims is four years (Cripps Decl., Ex. 5 (FAC ¶¶ 37, 49)), Northrop Grumman reserves the right to argue that her claims for premium wages under Labor Code § 226.7 are actually subject to a three-year statute of limitations (*see* Cal. Code Civ. Proc. § 338).

1  method" and "multiplying by twenty-five percent the sum of the amounts placed in
2  controversy by the four claims discussed previously"). Therefore, if Plaintiff's claims
3  under this section are included, then the calculations noted above would increase by
4  another 25%.

5    23.   Based on the foregoing, the jurisdictional amount in controversy
6  requirement is met and removal to this Court is proper under CAFA. *See Lewis*, 627
7  F.3d at 401 (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("once the
8  proponent of federal jurisdiction has explained *plausibly* how the stakes exceed $5
9  million . . . *then the case belongs in federal court unless it is legally impossible for the*
10 *plaintiff to recover that much*") (emphasis added).

11           **THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER**

12   24.   Based on the foregoing facts and allegations, this Court has original
13 jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (a) this is a civil
14 action which is a class action within the meaning of § 1332(d)(1)(B); (b) the action
15 involves a putative class of at least 100 persons as required by Section 1332(d)(5)(B);
16 (c) the alleged amount in controversy exceeds $5 million, exclusive of interest and
17 costs as required by Section 1332(d)(2); and (d) a member of the class is a citizen of a
18 state different from any defendant as required by Section 1332(d)(2)(A).

19   25.   The United States District Court for Southern District of California is the
20 federal judicial district in which the San Diego County Superior Court sits. This action
21 was originally filed in San Diego County Superior Court, rendering venue in this
22 federal judicial district and division proper. 28 U.S.C. § 84(d); *see also* 28 U.S.C.
23 § 1441(a). Although the action is being removed to federal court, Northrop Grumman
24 expressly reserves the right to file a petition to compel arbitration to challenge venue.
25 Per the parties' arbitration agreement, the issue of arbitrability shall be decided by this
26 court.

27   26.   True and correct copies of the Summons, Complaint, Civil Case Cover
28 Sheet, Notice of Case Assignment and Alternative Dispute Resolution (ADR)

1  Information, First Amended Complaint, and Service of Process Transmittal form are
2  attached as Exhibits 1–6 to the Cripps Declaration filed concurrently herewith.  This
3  constitutes all process, pleadings, and orders served upon Northrop Grumman.
4      WHEREFORE, Northrop Grumman hereby removes this action from the
5  Superior Court of California in and for the County of San Diego.

7  Dated: June 25, 2015

                    JESSE A. CRIPPS
                    ANDREW G. PAPPAS
                    GIBSON, DUNN & CRUTCHER LLP

                    By:  /s/ Jesse A. Cripps
                           Jesse A. Cripps

Attorneys for Defendant
NORTHROP GRUMMAN SYSTEMS CORP.

101948409.3