**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| ANH BUI, individually and on behalf of all others similarly situated, Plaintiff, v. NORTHROP GRUMMAN SYSTEMS CORP., a Delaware Corporation, Defendant. | CASE NO. 15-cv-1397-WQH-WVG ORDER |
|---|---|

HAYES, Judge:

The matters before the Court are (1) the Motion to Transfer Venue filed by Defendant Northrop Grumman Systems Corp. (ECF No. 6); (2) the Motion to Compel Bilateral Arbitration and Stay Proceedings, or, Alternatively, to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3) filed by Defendant (ECF No. 3); and (3) the Motion to Stay filed by Defendant (ECF No. 15).

**I. Background**

On April 14, 2015, Plaintiff Anh Bui commenced this action by filing the Class Action Complaint in San Diego County Superior Court. (ECF No. 1-3 at 6). On May 21, 2015, Plaintiff filed the First Amended Class Action Complaint ("FAC"), which is the operative complaint in this case. (ECF No. 1-3 at 30). The FAC asserts: (1) four state-law wage and hour claims arising from Plaintiff's employment with Defendant, (2) a claim for violation of California Business & Professions Code section 17200, *et seq.*, and (3) a claim for violation of California's Private Attorneys' General Act of

2004 ("PAGA"), seeking civil penalties for Defendant's alleged wage and hour violations. *Id.*

On June 25, 2015, Defendant removed the action to the Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. (ECF No. 1). On July 2, 2015, Defendant filed the Motion to Compel Bilateral Arbitration. (ECF No. 3). On July 20, 2015, Defendant filed the Motion to Transfer Venue. (ECF No. 6). On August 3, 2015, Plaintiff filed an opposition to the Motion to Transfer Venue. (ECF No. 8). On August 10, 2015, Defendant filed a reply in support of the Motion to Transfer Venue. (ECF No. 10). On August 10, 2015, Plaintiff filed a partial opposition and partial non-opposition to the Motion to Compel Bilateral Arbitration. (ECF No. 11). On August 17, 2015, Defendant filed a reply in support of the Motion to Compel Bilateral Arbitration. (ECF No. 12). On September 18, 2015, the Court heard oral arguments on the Motion to Compel Bilateral Arbitration and the Motion to Transfer Venue. (ECF No. 14).

On October 19, 2015, Defendant filed a Motion to Stay. (ECF No. 15). On November 2, 2015, Plaintiff filed an Opposition. (ECF No. 17). On November 4, 2015, Defendant filed a Reply. (ECF No. 18).

**II. Motion to Transfer Venue (ECF No. 6)**

Defendant moves pursuant to 28 U.S.C. § 1404(a) for an order transferring this action to the Central District of California. Defendant contends that transfer is warranted in the interests of justice because "two related cases are pending" in the Central District: *Zinzow v. Northrop Grumman Corp.*, Case No. 12-cv-04579-R-AJW (C.D. Cal.) and *Milstein v. Northrop Grumman*, Case No. 15-cv-04788-R-AJW (C.D. Cal.). Defendant contends that "time, energy and money" will be conserved by centralizing these cases because they all assert wage and hour claims that are subject to the same arbitration agreement. (ECF No. 6-1 at 4).

Plaintiff contends that "there are no pendency of related actions in the Central District" and therefore "there is no possible consolidation for purposes of saving time,

energy and money . . . ." (ECF No. 8 at 2). Plaintiff contends that her choice of venue is entitled to "some weight" because Plaintiff is a resident of San Diego and worked for Defendant in San Diego. *Id.* at 4-5.

**A. Section 1404(a) Standard**

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).

The United States Court of Appeals for the Ninth Circuit has articulated a non-exhaustive list of factors that a court may consider when ruling on a motion pursuant to § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The party moving for a transfer pursuant to § 1404(a) bears the burden to show that another forum is more convenient and serves the interest of justice. *See id.* "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "Rather than relying on vague generalizations of inconvenience, the moving party must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

**B. Discussion**

### i. Plaintiff's Choice of Forum

Although great weight is generally given to the plaintiff's choice of forum,

> when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight. In judging the weight to be accorded [the plaintiff's] choice of forum, consideration must be given to the extent of both [the plaintiff's] and the [defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action. If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration.

*Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citations omitted).

Plaintiff alleges that she was a resident of San Diego, California, "at all times relevant to this action" and that she "was employed by Defendants as a non-exempt employee at the San Diego NORTHROP location from approximately 2002 until approximately April 2014." (ECF No. 1-3 at 32). On the other hand, Plaintiff is purporting to represent a statewide class of employees. *Id.* at 33. Because the Complaint sufficiently alleges that Plaintiff and Defendant have substantial contacts with the Southern District, and that those contacts give rise to Plaintiff's claims, the Court concludes that Plaintiff's choice of forum is entitled to substantial weight.

### ii. Convenience of the Parties and Witnesses

Defendant does not contend that the Central District is a more convenient forum for the parties and witnesses. Because it is Defendant's burden to demonstrate inconvenience, the Court finds that this factor weighs in Plaintiff's favor. *See Decker Coal Co.*, 805 F.2d at 843.

### iii. Interest of Justice

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Waters v. Experian Information Solutions, Inc.*, No. 12cv308, 2012 WL 1965333, at *3 (S.D. Cal. May 31, 2012) (citing *Madani v. Shell Oil Co.*, No. 07–4296, 2008 WL 268986, at *2 (N.D. Cal. Jan.30, 2008)); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. Civ. 09–1442, 2009 WL 1992356, at *6 (E.D. Cal. July 8, 2009) (same); *Amazon.com v.*

1 *Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (same). "The pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor." *Jolly v. Purdue Pharma L.P.*, No. 05-cv-1452, 2005 WL 2439197, at *2 (N.D. Cal. Apr. 26, 2007); *see also Madani*, 2008 WL 268986, at *2 ("An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum."); *Bratton v. Schering–Plough Corp.*, No. CV 07–653, 2007 WL 2023482, at *5 (D. Ariz. July 12, 2007) ("In general, cases should be transferred to districts where related actions are pending.").

Because neither *Zinzow* nor *Milstein* are currently pending in the Central District, the Court finds that "the pendency of related actions" does not weigh in favor of transfer. *See Jolly*, 2005 WL 2439197, at *2. The Court concludes that the interest of justice does not favor transfer. Defendant's Motion to Transfer Venue is denied.

**III. Motion to Compel Bilateral Arbitration (ECF No. 3) and Motion to Stay (ECF No. 15)**

Defendant contends that all of Plaintiff's "employment-related" claims "must be submitted to bilateral arbitration" under the "express terms" of the Arbitration Agreement that Plaintiff entered into with Defendant. (ECF No. 3-1 at 7). Defendant contends that the Arbitration Agreement "provides for an express waiver of class-wide arbitration in favor of bilateral arbitration." *Id.* at 8. Defendant requests that the Court issue an order "compelling Plaintiff to submit all claims in this action to bilateral non-class arbitration" and "staying the case pending completion of arbitration." *Id* at 5. Alternatively, Defendant requests dismissal of this case with prejudice pursuant to Rule 12(b)(3) for improper venue.

"Plaintiff agrees to dismiss her putative class and class claims without prejudice and submit her individual claims to arbitration except for the PAGA claim." (ECF No. 11 at 2). Plaintiff opposes Defendant's motion to compel arbitration with respect to her PAGA claim. *Id.* at 1. Plaintiff requests that the Court exercise its discretion and

remand Plaintiff's PAGA claim to state court. *Id*. Plaintiff contends that only supplemental jurisdiction exists over the PAGA claim once the other claims are dismissed because the requirements of CAFA are no longer satisfied. *Id*. at 2-3. Plaintiff contends that the PAGA claim involves a complex issue of state law. *Id.* at 4. In the alternative, Plaintiff contends that the Court "should permit the PAGA Action to proceed in this Court." *Id*. at 10. Plaintiff contends that "the PAGA claim lies outside the scope of the arbitration agreement" and that the Arbitration Agreement "does not contemplate waiver of 'representative actions' such as PAGA." *Id*. Plaintiff contends that "Defendant cannot compel arbitration of a PAGA claim pursuant to *Iskanian v. CLS Transportation Los Angeles, LLC*," 327 P.3d 129 (Cal. 2014). *Id*. at 7. Plaintiff contends that "California's public policy against the waiver of representative PAGA claims in employment agreements is not preempted by the FAA . . . ." *Id*. at 8.

### A. Subject Matter Jurisdiction

Plaintiff requests that the Court decline to exercise supplemental jurisdiction over Plaintiff's PAGA claim and remand the PAGA claim to state court. Plaintiff contends that only supplemental jurisdiction exists over Plaintiff's PAGA claim because the "class claims which gave rise to the Court's original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1446, and 1453, will be dismissed by virtue of this non-opposition, leaving only the state PAGA claim." (ECF No. 11 at 2). Plaintiff contends that CAFA jurisdiction does not exist over Plaintiff's PAGA claim because her PAGA claim does not meet the general amount in controversy requirement and "cannot be aggregated to meet the amount in controversy" requirement. *Id.* at 6. Defendant contends that the Court does not "lose jurisdiction over Plaintiff's non-PAGA claims once she submits them to bilateral arbitration" because "[u]nder the express language of the FAA, this Court will retain jurisdiction over the non-PAGA claims even after they are sent to arbitration." (ECF No. 12 at 3).

Generally, federal courts adhere to the rule that subject matter jurisdiction is determined based on the circumstances at the time of filing. *See Grupo Dataflux v.*

*Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004). "[P]ost-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091-92 (9th Cir. 2010). For example, "[i]f a defendant properly removed a putative class action at the get-go, a district court's subsequent denial of . . . class certification does not divest the court of [CAFA] jurisdiction, and it should not remand the case to state court." *Id.* at 1092.

This Court had proper subject matter jurisdiction premised upon CAFA at the time of removal. Plaintiff's request to dismiss her putative class and class claims without prejudice and submit her individual claims to arbitration, except for the PAGA claim, does not divest the Court of CAFA jurisdiction. *See United Steel*, 602 F.3d at 1092. Plaintiff's request that the Court remand the PAGA claim to state court is denied.

### B. PAGA Claim
#### i. Contentions of the Parties

Plaintiff contends that "Defendant cannot compel arbitration of a PAGA claim pursuant to *Iskanian* . . . ." (ECF No. 11 at 7.) Plaintiff contends that "the PAGA claim lies outside the scope of the arbitration agreement in question." *Id.* Plaintiff contends that the Arbitration Agreement "does not contemplate waiver of 'representative actions' such as PAGA." *Id.* Plaintiff contends that a PAGA claim is a "representative action" which is different than a "class action." *Id.* Plaintiff contends that "the Court should permit the PAGA Action to proceed in this Court." *Id.* at 10.

Defendant contends that the "Arbitration Agreement expressly covers Plaintiff's PAGA claim, which by definition 'arises out of, relates to, or is associated with [her] employment with the Company.'" (ECF No. 12 at 2). Defendant contends that "even if the Agreement was silent on the question of bilateral arbitration–it is not–bilateral arbitration would be appropriate" because "[a]bsent an express agreement to consent to representative arbitration, bilateral arbitration is the default rule . . . ." *Id.* at 5.

1  Defendant contends that the Court should "compel Plaintiff to submit *all* her claims to
2  bilateral, non-class arbitration as required by her Arbitration Agreement. . . ." *Id.* at 10.
3     In the Motion to Stay (ECF No. 15), Defendant requests that the Court "compel
4  arbitration of the *individual* portion of Plaintiff's PAGA claim, and stay or defer any
5  decision regarding the arbitrability of the *representative* portion of Plaintiff's PAGA
6  claim" until a petition for rehearing en banc or a petition for certiorari is resolved in
7  *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 431 (9th Cir. 2015).
8  (ECF No. 15-1 at 3-4). Defendant states,

> if the arbitration reveals that Plaintiff has suffered no harm, then the *representative* portion of her PAGA claims will be moot, because PAGA claims may be pursued only be an "aggrieved employee." If the arbitration reveals that Plaintiff is in fact "aggrieved," and if the *Sakkab* appeal still has not been decided by that time, then at that point the Court and the parties can reassess whether a further stay of Plaintiff's representative PAGA claims pending a final decision in *Sakkab* is warranted.

(ECF No. 18 at 2). Defendant contends that absent a stay, Defendant would suffer prejudice

> by having to litigate Plaintiff's representative PAGA claims where: (a) Plaintiff has not yet even demonstrated that she is an "aggrieved" employee who has standing to pursue the PAGA claims on behalf of herself, much less others; and (b) in the absence of appellate guidance on the threshold issue of whether the representative PAGA claims can be waived in favor of bilateral PAGA arbitration in an arbitration agreement.

*Id.* at 3.
   Plaintiff contends that Defendant's Motion to Stay should be denied because "Plaintiff and the representative PAGA class will . . . be prejudiced if a stay is imposed as appeals can take a very long time." (ECF No. 17 at 3). Plaintiff contends that "such a lapse in time could cause evidence to be lost and memories to fade." *Id.*

### ii. The Arbitration Agreement

   On September 29, 2006, Defendant emailed Plaintiff documents titled "Employee Mediation/Binding Arbitration Program" (the "Arbitration Agreement") and "Dispute Resolution Process." (Declaration of Sherlyn Bravo ("Bravo Decl.") ¶ 6). On February 16, 2010, Defendant again emailed the "Employee Mediation/Binding

Arbitration Program" to Plaintiff. *Id.* at ¶ 7. On January 25, 2013, the "Employee Mediation/Binding Arbitration Program" was reauthorized and published online that day on the Northrop Grumman Intranet, to which employees regularly had access. *Id.* at ¶ 9.

The Arbitration Agreement, published on January 25, 2013, "covers all employees of Northrop Grumman, its subsidiaries, and its other affiliated entities (the 'Company'), who are employed on or after 1 November 2006 . . . ." Bravo Decl. Ex. H, ECF No. 3-5 at 65. "By accepting or continuing employment on or after 1 November 2006, all covered employees agree to submit any covered disputes to binding arbitration, rather than to have such disputes heard by a court or jury." *Id.* The Arbitration Agreement provides, in relevant part,

> Both you and the Company agree to submit all claims covered by this Program to binding arbitration, rather than to have such claims heard by a court or jury.
>
> . . . .
>
> [T]his Program covers and applies to any claim, controversy, or dispute, past, present, or future:
>
> • Which in any way arises out of, relates to, or is associated with your employment with the Company, the termination of your employment, or any communications with third parties regarding or related to your employment; and
> • As to which a court would be authorized by law to grant relief if the claim were successful.

*Id.* at 66. The Arbitration Agreement lists examples of covered claims including, but not limited to, claims for "[w]ages or other compensation due" and for "[a]ny violation of applicable federal, state, or local law, statute, ordinance, or regulation." *Id*.

Under the heading "**Class Action Claims**," the Arbitration Agreement provides, in relevant part,

> [B]oth you and the Company waive the right to bring any covered claim under this Program as a class action . . . . [T]he arbitrator will not have authority or jurisdiction to consolidate claims of different employees into one proceeding, nor shall the arbitrator have authority or jurisdiction to hear the arbitration as a class action.

*Id.* at 74.

### iii. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") "was enacted . . . in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Section 2 of the FAA provides, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (internal citation omitted).

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Pursuant to section 4 of the FAA, a party may move for a district court order compelling arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in

such agreement.

9 U.S.C. § 4.  Pursuant to section 3 of the FAA, a party may move for a court order staying a federal action pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

> The FAA requires that
>
> if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.

*KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24 (2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

### v. Discussion

In *Iskanian*, the California Supreme Court considered whether "representative action" waivers that cover PAGA actions in an employment contract "are permissible under state law and, if not, whether the FAA preempts a state law rule prohibiting such waivers." 327 P.3d at 145. The court held that "where . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Id*. at 149. The court concluded that a PAGA action is an enforcement action brought on behalf of California's Labor and Workforce Development Agency in order to enforce the Labor Code and deter unlawful practices. *Id*. at 146. Relying on California Civil Code sections 1668 and 3513, the court concluded that an "employee's right to bring a PAGA action is unwaivable." *Id*. at 148. The court further concluded that this rule "does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." *Id.* at 153. The

court reasoned that the objective of the FAA is to ensure resolution of private disputes in contrast to PAGA actions which are disputes between an employer and the state. The court concluded, "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state* . . . ." *Id*. at 151.

In *Sakkab*, the Court of Appeals for the Ninth Circuit concluded that the California Supreme Court's rule in *Iskanian* was not preempted by the FAA. *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 431 (9th Cir. 2015). The Court of Appeals concluded that "[a]greements waiving the right to bring 'representative' PAGA claims" are "unenforceable under California law." *Id*.

In this case, the Arbitration Agreement provides that, other than listed exceptions, both "you and the Company agree to submit" to arbitration "any claim, controversy, or dispute, past, present, or future" which "in any way arises out of, relates to, or is associated with your employment with the Company" and "[a]s to which a court would be authorized by law to grant relief if the claim were successful." Bravo Decl. Ex. H, ECF No. 3-5 at 66. PAGA is a "claim" that "relates to, or is associated with" Plaintiff's employment. Plaintiff's PAGA claim is not listed as an exception to the Arbitration Agreement. The Arbitration Agreement contains an express class action waiver, but it does not contain an express PAGA waiver. Neither *Iskanian* nor *Sakkab* suggest that PAGA claims cannot be arbitrated. *See e.g., Sakkab*, 803 F.3d at 434 ("The California Supreme Court's decision in *Iskanian* expresses no preference regarding whether individual PAGA claims are litigated or arbitrated."). Based on the broad language of the Agreement, the Court concludes that Plaintiff's PAGA claim falls within the scope of the Arbitration Agreement.

Defendant contends that although the Arbitration Agreement "expressly covers Plaintiff's PAGA claim," the Arbitration Agreement "contemplates *bilateral* arbitration, not an arbitration to adjudicate claims affecting . . . [multiple] employees." (ECF No. 12 at 2). Citing to the "Class Action Claims" section, Defendant contends that the

1  Agreement "expressly prohibits the consolidation of 'claims of different employees' in
2  'one proceeding.'" *Id*. However, the "Class Action Claims" waiver section of the
3  Agreement is silent as to representative actions. The Agreement in this case does not
4  provide a waiver for PAGA actions.
5    Relying, in part, on *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662
6  (2010), Defendant also contends that "even if the arbitration agreement was silent on
7  the question of class or collective action waivers . . . bilateral arbitration is the rule, not
8  the exception . . . ." *Id*. at 1-2. In *Stolt-Nielsen,* the Supreme Court of the United States
9  held that "a party may not be compelled under the FAA to submit to class arbitration
10 unless there is a contractual basis for concluding that the party *agreed* to do so." 559
11 U.S. at 684. However, in *Sakkab*, the Court of Appeals noted that there are
12 "fundamental differences between PAGA actions and class actions." 803 F.3d at 435;
13 *cf. Baumann v. Chase Inv. Serv.s Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) ("PAGA
14 actions are not sufficiently similar to Rule 23 class actions to trigger CAFA
15 jurisdiction."). The Court of Appeals concluded in *Sakkab* that unlike a class action,
16 which "is a procedural device for resolving the claims of absent parties on a
17 representative basis," PAGA "does not give absent employees any substantive right to
18 bring their 'own' PAGA claims." *Id*. A PAGA action is "a statutory action for
19 penalties brought as a proxy for the state" unlike a class action, which is a "procedure
20 for resolving the claims of other employees," *Id.* at 436. Therefore, "there is no need
21 to protect absent employees' due process rights in PAGA arbitrations." *Id*.
22   In this case, the broad language in this Agreement covers PAGA claims. A
23 PAGA claim is a claim which allows an "aggrieved employee" to bring an action for
24 civil penalties arising out of violations of the California Labor Code that could
25 otherwise only be assessed and collected by California's Labor and Workforce
26 Development Agency. Cal. Lab. Code § 2699(a). A plaintiff proceeding under PAGA
27 brings the action "on behalf of himself or herself *and* other current or former
28 employees." Cal. Lab. Code § 2699(a) (emphasis added). Even if PAGA authorizes

"purely 'individual' claims," the representative portion of the claim is within the broad language of the Arbitration Agreement in this case.

In Defendant's Motion to Stay, Defendant requests the Court "compel arbitration of the *individual* portion of Plaintiff's PAGA claim" and stay "the *representative* portion of Plaintiff's PAGA claim until a petition for rehearing en banc or a petition for certiorari is resolved in *Sakkab*." (ECF No. 15-1 at 3-4). Defendant contends that "if the arbitration reveals that Plaintiff has suffered no harm, then the *representative* portion of her PAGA claims will be deemed moot because PAGA claims may only be pursued by an 'aggrieved employee.'" *Id*. at 3. Defendant contends that "[a] stay of [Plaintiff's] representative PAGA claims would thus promote judicial efficiency by allowing the appellate courts to clarify the key remaining legal issue in the case, and would not result in any meaningful prejudice to Plaintiff while the parties proceed with arbitration of her individual non-PAGA and PAGA claims." *Id*.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of *independent proceedings* which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (emphasis added). When issuing a stay, a court "must weigh competing interests and maintain an even balance." *Id*.

> Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to

some one else." *Landis*, 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

In this case, Defendant contends that a temporary stay would not "meaningfully prejudice" Plaintiff because Plaintiff's individual PAGA claim will be arbitrated and resolution of Plaintiff's individual PAGA claim will help determine the proper course for Plaintiff's representative PAGA claim. Plaintiff contends that her "representative PAGA class" will "be prejudiced" because "appeals can take a very long time." (ECF No. 17 at 3). Defendant has not made out a clear case of hardship or inequity other than Defendant "would suffer by having to litigate Plaintiff's representative PAGA claims . . . ." (ECF No. 18 at 3). If the stay is not granted Defendant must proceed on arbitration of Plaintiff's representative PAGA claim, but "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). A decision has been issued in *Sakkab*. The possibility that an en banc hearing may be held is not sufficient grounds on which to issue a stay in this case. Defendnat's Motion to Stay (ECF No. 15) is denied.

**IV. Conclusion**

IT IS HEREBY ORDERED that Defendant's Motion to Transfer Venue (ECF No. 6) is denied.

IT IS FURTHER ORDERED that, pursuant to Plaintiff's request, Plaintiff's first through fifth putative class and class claims are dismissed without prejudice. (ECF No. 11 at 1).

IT IS FURTHER ORDERED  that the Motion to Compel Bilateral Arbitration and Stay Proceedings is granted (ECF No. 3). Pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration in accordance with the terms of the Arbitration Agreement with respect to all of Plaintiff's remaining claims. This litigation is stayed pending the outcome of the arbitration. The parties shall file a joint status report on

June 10, 2016.

    IT IS FURTHER ORDERED that Defendant's Motion to Stay (ECF No. 15) is denied.

DATED: December 10, 2015

*/s/ William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge